United States District Court
Southern District of Texas
**ENTERED**
March 31, 2016
David J. Bradley, Clerk

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| BORIS TWAIN CLEWIS, | § | |
| TDCJ #694570, | § | |
| | § | |
| Plaintiff, | § | |
| VS. | § | CIVIL ACTION NO. H-13-2308 |
| | § | |
| BILLY D HIRSCH, *et al*, | § | |
| | § | |
| Defendants. | | |

## MEMORANDUM AND ORDER

Plaintiff Boris Twain Clewis ("Clewis"), a state inmate currently incarcerated by the Texas Department of Criminal Justice-Correctional Institutions Division ("TDCJ"), filed this *pro se* civil rights complaint pursuant to 42 U.S.C. § 1983 and Title II of the Americans with Disabilities Act, 42 U.S.C. § 12132, for various events which allegedly occurred over the course of about two years and involved numerous defendants. Clewis's principal complaints appear to involve the management, confiscation, and eventual disposal of some of his legal property by various officials at TDCJ's Wynne Unit.

Before the Court is defendants' Motion for Summary Judgment (Docket Entry No. 35). After reviewing the motion, the responses, the record, and the applicable law, the Court concludes that the motion should be granted and that all claims should be dismissed.

## I.    Background

Clewis presents a long narrative detailing various events and incidents which occurred at the Wynne Unit. He names the following individuals as defendants who were TDCJ employees at the Wynne Unit at the time the alleged incidents took place: Warden Billy Hirsch ("Warden Hirsch"), Assistant Warden Kevin Mayfield ("Warden Mayfield"), Property Officer Lawanda M.

Hightower ("Officer Hightower"), Property Officer Ineequa A. Fisher ("Officer Fisher"), Access to Courts Supervisor and Law Librarian Robert H. Quada, Jr. ("Quada"), Captain Gregory Vaughn ("Captain Vaughn"),[1] Correctional Officer Courtney N. Scott ("Officer Scott"), Captain of Correction and Disciplinary Hearing Officer Bruce D. Baggett ("Captain Baggett"), Correctional Officer Garland R. Goodrum ("Officer Goodrum"), John and Jane Does, Major Robert J. Jenkins, Jr. ("Major Jenkins"), Captain Kendric Demyers ("Captain Demyers"), Sergeant Terrilyn H. Merchant ("Sergeant Merchant"),[2] Lieutenant J.G. Burleyson ("Lieutenant Burleyson"), Lieutenant B.D. Rigsby ("Lieutenant Rigsby"),  Assistant Warden Tony Selman ("Warden Selman"), and Assistant Program Administrator for the Access to Courts Program Vickie Barrow ("Barrow").[3]

### A.   Chronology

Plaintiff's claims stem from a series of periodic, routine cell searches called shakedowns.[4]  In particular, the Complaint takes issue with shakedowns that occurred on August 10, 2011, November 29, 2011, April 5, 2012, and October 18, 2012.[5]  These shakedowns, which culminated in the confiscation and destruction of Clewis's excess personal and legal property, are chronicled below.

---

[1] According to the pleadings, Defendant Gregory M. Vaughn ("Vaughn") was, at the time of suit, a Captain of Correction at Wynne and is now a Major of Correction at the Estelle Unit.  Docket Entry No. 1 (Complaint) at 3(a).

[2] According to the pleadings, Defendant Merchant was a sergeant at the time in question and now is a Correctional Officer-5 at the Wynne Unit.  *Id.*

[3] *Id*. at 3, 3(a), 3(b), 3(b1), 3(b2).

[4] *Id*. at 4(a) ¶6; Docket Entry No. 35 at 2.

[5] Complaint at 4(a) ¶ 6; 4(f) ¶ 18; 4(g-h) ¶¶ 20-21; 4(k) ¶ 25.

### 1.     The August 10, 2011 shakedown

According to Clewis's Complaint, on August 10, 2011, all inmates were ordered to move their possessions to the first floor for inspection for the semi-annual shakedown.[6]  In response to being told to bring his property to the shakedown area, Clewis allegedly asked the field officer for the names of the persons in charge of the shakedown, and the officer indicated that Captain Demyers and Lieutenant Bolten were in charge.[7]  Clewis allegedly asked to talk to a supervisor about getting a cart or having help from another inmate because his back was bad that day.[8]  An officer allegedly radioed for a cart but later notified Clewis that he had to bring his property down to the first floor because no cart could come up to the second floor.[9]  Field officers allegedly yelled to the inmates that if the inmates did not come out with their property, they were going to lockup.[10]  Clewis claims he picked up two bags and set them outside his cell but complained to the field officers that he had asked to talk to a supervisor.[11]  Officer Scott allegedly advised him not to leave at that point.[12]  When Captain  Vaughn and other field officers came to his cell, Captain Vaughn allegedly yelled at Clewis: "Get your bitch ass down stairs."[13] Clewis informed Captain Vaughn that Vaughn did not have to call him a "bitch," to which the field officers with Captain Vaughn allegedly responded by handcuffing Clewis and telling him

---

[6] *Id*. at 4(a) ¶¶ 6-8; 4(b) ¶ 9; 4(c) ¶¶ 10-11.

[7] *Id*. at 4(a) ¶ 8.

[8] *Id.*

[9] *Id.*

[10] *Id.*

[11] *Id.*

[12] *Id.*

[13] *Id.* at 4(b) ¶ 8.

not to talk to the Captain Vaughn in that manner.[14]  Officer Scott allegedly kicked the two bags Clewis had carried out of his cell from the second floor to the first floor, which Clewis claims damaged his typewriter, radio, and other property.[15]  Clewis filed two grievances regarding the shakedown, one complaining about Captain Vaughn, Officer Scott, and any other officers that were at the scene at his cell (Grievance No. 2011215851), and one regarding property room procedure with respect to his damaged typewriter (Grievance No. 20112211502).[16]  Prison officials handling the grievances found no evidence or other basis for either of these grievances, which had proceeded through both steps of the grievance process.[17]

### 2.     The November 29, 2011 shakedown

According to Clewis, on November 29, 2011 the Wynne Unit conducted another shakedown where the inmates were instructed to bring their property to the gym for inspection, and Clewis complied.[18]  Even so, he filed another grievance (Grievance No. 2012064924) to complain that the prison had violated the ADA because he had asked to talk to a supervisor again and that Sergeant Pineiro allegedly appeared at his door yelling at him and asking what the problem was.[19]  Clewis alleges he told Sergeant Pineiro that he had a back injury and other medical problems and could not pack his property.  Sergeant Pineiro allegedly informed Clewis that if he did not pack up his property it would be confiscated.[20]  Captain Vaughn, Lieutenant

---

[14] *Id.*

[15] *Id.*

[16] *Id.* at 4(a-c) ¶¶ 7-10.

[17] *Id.*

[18] *Id.* at 4(f) ¶ 18.

[19] *Id.*

[20] *Id.* Sergeant Pineiro is not a named defendant.

Burleyson, and Lieutenant Rigsby allegedly told Clewis to break his property down into smaller amounts, so Clewis dragged his property to the gym, which Clewis claims took him 1 ½ hours and several trips.[21]   Lieutenant Rigsby allegedly walked behind Clewis and taunted him by saying that Clewis was "walking the Green Mile get right with Jesus, etc."[22]   Clewis requested in his grievance that he be allowed assistance, including carts, to move his property to the shake-down area.[23]

The response to Clewis's November 29, 2011 grievance stated that anyone with a verifiable medical condition may have assistance to move their possessions, and that the officers accommodated Clewis by allowing him to make as many trips as needed in order for him to move his property within his 25-pound weight restriction.[24]   It is undisputed that no property was confiscated during the November 29, 2011 shakedown.

### 3.   The April 5, 2012 shakedown

On April 5, 2012, the prison conducted another shakedown.[25]   Clewis alleges that he complied with the order to pack up his property for the shakedown, but that he was written up for a disciplinary case (Disciplinary Case No. 20120217073).[26]   Clewis was charged with the following offense: "Clewis . . . did refuse to pack his property and take it to C-gym which resulted in a significant disruption of operations in that such act caused the annual shakedown to be stopped/interrupted, and was ordered by Sgt. Merchant to pack his property and said offender

---

[21] *Id.*

[22] *Id.*

[23] *Id.*

[24] *Id.* at 4(g) ¶ 18.

[25] *Id.* ¶ 20.

[26] *Id.*

failed to obey the order."[27]   Clewis was found guilty of the offense, lost commissary privileges and was restricted to his cell for forty-five days, and was put in solitary confinement for fifteen days.[28]

For his hearing, Clewis submitted unsworn declaration in order to contest the disciplinary case.[29]   In that declaration, incorporated into his pleadings, Clewis alleges the following facts:

Clewis had packed up almost all of his property, except his "fan, hot pot, multi-outlet plug (7 plugs), etc.," but when the officers came for him to get his property and go to the gym, Clewis could not comply right away because he had to use the bathroom.[30]   Sergeant Merchant yelled at him to finish up and to take down the sheet blocking her view.[31]   Clewis complied, and then Sergeant Merchant told him to bring his property to the gym in one trip.[32]   Clewis objected, stating that he had a medical issue and that he needed a cart.[33]   At that point, Officer Butler explained that it was not possible to bring a cart to the third floor.[34]   Sergeant Merchant then asked Clewis if he had a pass for a cart, and Clewis told her "no."[35] Sergeant Merchant again told Clewis to move his property down to the gym.[36]   Clewis then asked to talk to a supervisor, and

---

[27] Docket Entry No. 35-1, Exh. B, at 30 of 64.

[28] *Id.*

[29] Complaint at 4(g) ¶ 20.

[30] *Id.* at 4(h) ¶ 21.

[31] *Id.*

[32] *Id.*

[33] *Id.*

[34] *Id.*

[35] *Id.*

[36] *Id.*

Sergeant Merchant informed him that she was the supervisor.[37]   At that, Clewis picked up the two lightest bags and headed to the gym, but by that time the cell block door was locked.[38] Sergeant Merchant again told him to get the rest of his property, and he allegedly came back to his cell and decided that he needed to change his shoes, which again delayed the process of moving his property.[39]   At that point, Sergeant Merchant told him he was moving too slowly and that he was going to lockup.[40]   Clewis alleges that he told Sergeant Merchant that he hurt his back, and Sergeant Merchant and Officer Brumley took him to the infirmary.[41]   His property was confiscated.[42]

On April 26, 2012, Clewis allegedly went to the property room to get the property that had been confiscated on April 5, 2012.[43]   He alleges that he refused to sign off on receiving his property because he wanted to inspect all of it first to make sure nothing was damaged or missing.[44]   Officer Hightower, the officer in the property room at the time, allegedly became angry at Clewis's refusal to sign for his own property (on a form called a "PROP-05" form) and stated that she would keep all of Clewis's property because he had a property claim pending.[45]

---

[37] *Id.*

[38] *Id.*

[39] *Id.*

[40] *Id.*

[41] *Id.*

[42]  *Id.* ¶ 22.

[43] *Id.*

[44] *Id.* at 4(i) ¶ 22.

[45] *Id.*

She asked him again to sign the PROP-05 form, and again he refused.[46]   Officer Hightower released most of his property to him at that point, except some of his magazines for which she needed proof of ownership.[47]

When Clewis received his property back from the property room, Sergeant Merchant allegedly told him that she was going to write him up every day until he came into compliance with the rules and that he would have to carry his own property without assistance.[48]   Clewis alleges that he believed Sergeant Merchant was either angry at him because he filed a grievance against her or she was angry that he was getting his property back.[49]   Clewis alleges that he explained to Sergeant Merchant that he had a hurt knee and 25 pound lifting restriction, and that Sergeant Merchant told him that he would need to break down the loads to 25 pounds each and make multiple trips.[50]   Clewis alleges that he took several trips and that he limped as he carried his property back to his cell.[51]

### 4.  The October 18, 2012 shakedown

During the October 18, 2012 shakedown, Clewis allegedly asked to talk to a supervisor again and explained that he had requested an extra legal box for his legal materials.[52]   The supervisor allegedly notified Clewis that anything that did not fit in his prison-issued red box

---

[46] *Id.*

[47] *Id.*

[48] *Id.*

[49] *Id.*

[50] *Id.*

[51] *Id.*

[52] *Id.*  at 4(k) ¶ 26.

would have to go to the property room.[53]  Clewis claims he brought his 6 or 7 bags of excess legal materials to the property room and was given a PROP-05 form, which he did not sign.[54] The "Disposition of Confiscated Offender Property" stated that the reason for the confiscation was "excessive amounts" of property.[55]  Clewis filed another grievance the day of the shakedown requesting that the excess legal property be returned to him and that he be issued an extra legal storage box.[56]  The grievance response, signed by Warden Selman on November 28, 2012, stated that the proper procedure for Clewis was to request an extra legal box from the Law Library Supervisor and that prison records indicated that Clewis's property had been confiscated according to policy Administrative Directive ("AD")-03.72.[57]  The response informed Clewis that it was "[Clewis's] responsibility to reconcile with the property officer to make appropriate disposition of the confiscated property."[58]  Prison officials reviewing the grievance found no evidence of policy violations or staff misconduct related to the October 18, 2012 shakedown and confiscation of property.[59]

On January 31, 2013, Barrow signed a step 2 response to Clewis's grievance about not receiving an extra storage box, explaining:  "In accordance with AD-03.72, you had excess personal property that could not be stored; on 10/18/12 the excess property was confiscated and

---

[53] *Id.*

[54] *Id.*

[55] *Id.*

[56] *Id.*

[57] *Id.* at 4(l) ¶ 26.

[58] *Id.*

[59] *Id.*

placed in the property room.  You chose which items to keep and which items to dispose."[60]  The response also indicated that "[a]ccording to Mr. Quada, Unit Access to Courts Supervisor, a request for subsequent storage was not received from you from February 2011 through October 18, 2012."[61]

On March 6, 2013, Clewis was warned: "Your property was inspected by law library staff and it was determined the property is not legal; therefore, you must make arrangements to have the property picked up at visitation or have it mailed home at your expense.  Otherwise, the property will be destroyed in accordance with AD-03.72."[62]

On March 14, 2013, Clewis filed a step 2 grievance stating that faced with the choice of sending his property home or having it destroyed, Clewis would like to be allowed to send it home.[63]  Clewis claims in his grievance that he spoke with Officer Hightower, who indicated that the week of March 25 would be best for sending the property home.[64]  Clewis alleges that he returned to the property room on April 3 and April 4, 2013, but that Officer Hightower was not there and that Officer Fisher denied his request at that time to complete the paperwork to send his property home.[65]

In a grievance response notice dated April 5, 2013, Clewis was informed that the issue of his property had already been addressed in Grievance Nos. 2013030100 and 2013074759.[66]  The

---

[60] *Id.*  at 4(m) ¶ 29.

[61] *Id.*

[62] *Id.* at 4(o) ¶ 31.

[63] *Id.* at 4(o) ¶ 32.

[64] *Id.*

[65] *Id.*  at 4(q) ¶¶ 37-38.

[66] *Id.* at 4(o) ¶ 32.

10 / 38

response reiterated that Clewis's excess property could not be stored, that he chose which items to keep and which ones to dispose, and that "disposition of your property has been made in accordance with AD-03.72."[67]

### 5.    Law Library Incidents

While at the Wynne Unit, Clewis also filed at least two grievances complaining about Officer Goodrum in the law library.  In Grievance No. 2103044148, Clewis claimed that Officer Goodrum denied him access to the law library when he arrived late for his alloted time on November 13, 2012.[68]  In Grievance No. 2013079264, Clewis claimed that Officer Goodrum yelled at him for staying in the law library past his allotted time on January 15, 2013.[69]  Neither grievance was sustained.[70]

On or around December 19, 2012, Officer Goodrum filed Disciplinary Case No. 21030110920  against Clewis for "intentionally damag[ing] volume 355 S.W.3d 857 by using ink pen to draw on pages of case [page] 5 and [page] 7, said property belonging to the State of Texas."[71]  Clewis pled not guilty and submitted an unsworn declaration stating that Quada had confronted him about the writing on the case and that Clewis had said he was not the only one to use legal materials.[72]  Clewis includes interrogatories that he presented to the charging officer, indicating that the charging officer did not actually see Clewis write on the legal material but that

---

[67] *Id.*

[68] Docket Entry No. 1-17, Exh. 12, at 2-3.

[69] *Id.* at 8.

[70] *Id.* at 3, 5, 7, 9.

[71] *Id.* at 16.

[72] *Id.* at 18-19.

no other offenders had possession of the property in question.[73]  Clewis does not deny the charge

in his unsworn declaration.[74]  Clewis was found guilty of the offense, lost commissary privileges

and was restricted to his cell for thirty days, and was reduced in class.[75]

On or around January 17, 2013, Clewis was notified that Officer Goodrum had filed

Disciplinary Case No. 21030112498, charging Clewis with "eating candy in the law library of

which he had been verbally warned twice before not to bring or eat candy in [the] law library but

offender failed to obey said order."[76]  Clewis submitted an unsworn declaration in response to

the disciplinary report, in which he explains that he was not feeling well that morning and that he

had put a candy in his mouth about half an hour before going to the library.[77]  Clewis admits that

he still had some of the candy in his mouth when he signed in at the library and that Officer

Goodrum told him to spit it out.[78]  Clewis was found guilty of the offense, lost recreation and

commissary privileges for six days, and was restricted to his cell for six days.[79]  Clewis alleges

that Officer Goodrum filed these disciplinary charges in retaliation for Clewis complaining about

Officer Goodrum blocking his access to the courts.

###    B.    Claims and Relief Sought

Although not entirely clear from the pleadings, Clewis appears to assert the following

---

[73] *Id.*

[74] *Id.*

[75] *Id.* at 16.  It is not clear from the form, but it appears that Clewis's class was reduced from S4 to L1.
*Id.*

[76] *Id.* at 20.

[77] Docket Entry No. 1-17 at 21.

[78] *Id.* at 22.

[79] *Id.* at 20.

claims against the corresponding defendants identified above: (1) destruction of personal property by kicking it from the second floor down to the first floor (against Officer Scott and Captain Vaughn); (2) authorized destruction of personal property pursuant to an unconstitutionally vague prison policy, AD-03.72, without due process (against Warden Hirsch, Warden Mayfield, Officer Hightower, Quada, Officer Fisher, Major Jenkins, Warden Selman, Captain Vaughn, and Barrow); (3) denial of his right to access the courts (against unspecified defendants); (4) Eighth Amendment violations (against Captain Baggett, Captain Demyers, Sergeant Merchant, Lieutenant Burleyson, and Lieutenant Rigsby); (5) due process violations regarding disciplinary convictions and denial of an extra storage box (against unspecified defendants); (6) retaliation (against Sergeant Merchant and Officer Goodrum); and (7) ADA violations (against unspecified defendants). Clewis alleges the claims against defendants in their official and individual capacities.

For relief, Clewis seeks: (1) a declaratory judgment that the foregoing actions violated his constitutional rights under the Eighth and Fourteenth Amendments and the Due Process Clause; (2) a declaratory judgment that Sergeant Merchant and Officer Goodrum retaliated against him; (3) a declaratory judgment that defendants violated his right to access the courts; (4) a declaratory judgment that defendants violated the ADA; (5) a declaratory judgment that AD-03.72 is unconstitutionally vague; (6) an injunction expunging his disciplinary convictions; and (7) compensatory and punitive damages for the above-mentioned alleged wrongs.[80]   He also seeks the appointment of counsel and a Writ of Habeas Corpus Ad Testificandum.[81]

---

[80] Complaint at 4(x)-4(y).

[81] *Id.* at 4(x).

## II.    Standards of Review

### A.    Prisoner Litigation Reform Act Standard

The complaint in this case is governed by the Prison Litigation Reform Act ("PLRA").

The PLRA requires that the district court review a complaint in a civil action in which a prisoner

seeks redress from a governmental entity or officer or employee of a governmental entity. 28

U.S.C. § 1915A(a). On review, the Court must identify cognizable claims or dismiss the

complaint or any portion thereof, if the court determines that the complaint is frivolous,

malicious, fails to state a claim upon which relief may be granted, or seeks monetary relief from

a defendant who is immune from such relief. 28 U.S.C. § 1915A(b). In conducting that analysis,

a prisoner's *pro se* pleading is reviewed under a less stringent standard that those drafted by an

attorney and is entitled to a liberal construction that includes all reasonable inferences which can

be drawn from it.  *Haines v. Kerner,* 404 U.S. 519 (1972); *Alexander v. Ware,* 714 F.2d 416, 419

(5th Cir. 1983).

A complaint may be dismissed as frivolous if it lacks any arguable basis in law or fact.

*Neitzke v. Williams,* 490 U.S. 319, 325 (1989); *Talib v. Gilley,* 138 F.3d 211, 213 (5th Cir. 1998).

"A complaint lacks an arguable basis in law if it is based on an indisputably meritless legal

theory, such as if the complaint alleges violation of a legal interest which clearly does not exist."

*Harris v. Hegmann,* 198 F.3d 153, 156 (5th Cir. 1999) (citing *Harper v. Showers,* 174 F.3d 716,

718 (5th Cir. 1999) (quoting *Davis v. Scott,* 157 F.3d 1003, 1005 (5th Cir. 1998)).  A review for

failure to state a claim is governed by the same standard used to review a dismissal pursuant to

Rule 12(b)(6) of the Federal Rules of Civil Procedure.  *See Newsome v. EEOC,* 301 F.3d 227,

231 (5th Cir. 2002). Under that standard, courts must assume that plaintiff's factual allegations

are true, and a dismissal is proper only if it appears that no relief could be granted under any set

of facts that could be proven consistent with the allegations.  *Id.* (citations omitted).

      **B.**    **Summary Judgment Standard**

      To be entitled to summary judgment, the pleadings and summary judgment evidence must show that there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law.  FED. R. CIV. P. 56.  The moving party bears the burden of initially pointing out to the court the basis of the motion and identifying the portions of the record demonstrating the absence of a genuine issue for trial.  *Duckett v. City of Cedar Park, Tex.*, 950 F.2d 272, 276 (5th Cir. 1992).  Thereafter, "the burden shifts to the nonmoving party to show with 'significant probative evidence' that there exists a genuine issue of material fact."  *Hamilton v. Seque Software, Inc.*, 232 F.3d 473, 477 (5th Cir. 2000) (quoting *Conkling v. Turner*, 18 F.3d 1285, 1295 (5th Cir. 1994)).  The Court may grant summary judgment on any ground supported by the record, even if the ground is not raised by the movant.  *U.S. v. Houston Pipeline Co.*, 37 F.3d 224, 227 (5th Cir. 1994).

**III.**    **Discussion**

      **A.**    **Official capacity claims against state employees pursuant to 42 U.S.C. § 1983**

      The Eleventh Amendment provides that "[t]he Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State."  U.S. CONST. amend. XI.  Federal court jurisdiction is limited by the Eleventh Amendment and the principle of sovereign immunity that it embodies.  *See Seminole Tribe of Florida v. Florida*, 517 U.S. 44, 54-55 (1996); *see also Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 100-01 (1984) (explaining that the Eleventh Amendment acts as a jurisdictional bar to suit against a state in federal court).  Unless expressly waived, the Eleventh Amendment bars an

action in federal court by, *inter alia*, a citizen of a state against his or her own state, including a state agency. *See Martinez v. Texas Dep't of Criminal Justice*, 300 F.3d 567, 574 (5th Cir. 2002).

As a state agency, TDCJ is immune from a suit for money damages under the Eleventh Amendment unless it is waived or abrogated by Congress. *See Talib v. Gilley*, 138 F.3d 211, 213 (5th Cir. 1998). It is also settled that the Eleventh Amendment bars a recovery of money damages under 42 U.S.C. § 1983 from state employees in their official capacity. *See Oliver v. Scott*, 276 F.3d 736, 742 (5th Cir. 2001); *Aguilar v. Texas Dep't of Criminal Justice*, 160 F.3d 1052, 1054 (5th Cir. 1998).

An exception to Eleventh Amendment immunity exists for suits brought against individuals in their official capacity, as agents of the state or a state entity, where the relief sought is injunctive in nature and prospective in effect. *See Aguilar*, 160 F.3d at 1054 (citing *Ex parte Young*, 209 U.S. 123 (1980)). Clewis's prayer for declaratory relief principally concerns alleged acts and omissions in the past, with the exception of his request for an injunction to expunge his disciplinary convictions. Thus, with the exception of the request for expungement of his disciplinary convictions,[82] the Eleventh Amendment bars Clewis's section 1983 claims against defendants in their official capacities as state employees.

### B.    Individual capacity claims under Section 1983 – Qualified Immunity

Public officials acting within the scope of their authority generally are shielded from civil liability by the doctrine of qualified immunity. *See Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). Qualified immunity protects "all but the plainly incompetent or those who knowingly

---

[82] As shown in section III.C.4, *infra*, this claim for prospective injunctive relief fails as a matter of law because Clewis does not raise a fact issue that he had a protected liberty or property interest for which he was denied due process in any of the disciplinary hearings.

violate the law." *Malley v. Briggs*, 475 U.S. 335, 341 (1986).  As a result, courts will not deny qualified immunity unless "existing precedent . . . placed the statutory or constitutional question beyond debate," *Ashcroft v. al-Kidd*, 563 U.S. 731, 131 S. Ct. 2074, 2083 (2011). Therefore, a plaintiff seeking to overcome qualified immunity must show: "(1) that the official violated a statutory or constitutional right, and (2) that the right was 'clearly established' at the time of the challenged conduct." *Id*. at 2080 (citation omitted).  When a defendant raises the defense of qualified immunity, the plaintiff bears the burden to negate the defense once it is properly raised. *Brumfield v. Hollins*, 551 F.3d 322, 326 (5th Cir. 2008) (citing *Bazan ex rel. Bazan v. Hildago County*, 246 F.3d 481, 489 (5th Cir. 2001)).

### C.    Individual capacity claims under Section 1983 – Analysis

#### 1.    Property damaged or destroyed not pursuant to prison policy

Clewis brings claims against Officer Scott and Captain Vaughn for the August 10, 2011 incident where Officer Scott allegedly kicked Clewis's bags of property from the second floor to the first floor, damaging or destroying his typewriter, radio, and other property.  Taken as true, these allegations describe acts that would not be authorized by any prison policy or other official directives, but were random and unauthorized acts by a prison guard.  To the extent that Clewis complains that his property was wrongfully damaged or destroyed as the result of random and unauthorized acts by prison officials, his claims are barred by the *Parratt/Hudson* doctrine.  *See Hudson v. Palmer,* 468 U.S. 517, 534 (1984); *Parratt v. Taylor,* 451 U.S. 527, 541 (1981), *overruled in part on other grounds, Daniels v. Williams,* 474 U.S. 327 (1986); *see also Sossaman v. Williams*, 270 F. App'x 323, 325 (5th Cir. 2008) (confiscation and destruction of "dangerous contraband" by guard was random and unauthorized and therefore prisoner's due process claim was barred).  According to this doctrine, a negligent, or even intentional, deprivation of property

by state officials that is random and unauthorized does not rise to the level of a constitutional violation or a cognizable claim under 42 U.S.C. § 1983 if state law provides an adequate post-deprivation remedy. *See Hudson,* 468 U.S. at 533-34; *see also Stotter v. Univ. of Tex. at San Antonio,* 508 F.3d 812, 821-22 (5th Cir. 2007) (explaining the *Parratt/Hudson* doctrine).

Texas provides a remedy for inmates whose property has been taken or destroyed in an unauthorized manner. *See Myers v. Klevenhagen,* 97 F.3d 91, 95 (5th Cir.1996); *Aguilar v. Chastain,* 923 S.W.2d 740, 743-44 (Tex. Crim. App.1996); *see also* Tex. Gov't Code §§ 501.007, 501.008.  In fact, the record evidence submitted by Clewis establishes that Clewis has filed an action in state court against Officer Scott and Captain Vaughn regarding the same conduct that is alleged here.[83]  Clewis's complaint regarding the unauthorized destruction of his property has no basis in federal law because Texas provides an adequate post-deprivation remedy. *See Murphy v. Collins,* 26 F.3d 541, 543-44 (5th Cir. 1994).

Accordingly, with respect to his claims against Officer Scott and Captain Vaughn for the August 10, 2011 alleged destruction of Clewis's property, Clewis does not articulate an actionable claim for which relief can be granted under 42 U.S.C. § 1983. *See id.; see also Leggett v. Williams,* 277 F. App'x 498, 500, 2008 WL 1984271 (5th Cir. 2008) (holding that the plaintiff's claim that his property was confiscated and destroyed as an act of retaliation for his status as a writ writer was barred by the *Parratt/Hudson* doctrine).

---

[83] *See* Docket Entry No. 1-3, Exh. 1, at 2. The Court expresses no opinion about whether Clewis may have a state tort claim against one or more defendants for unauthorized destruction or damage of his personal property.  The Court declines to exercise supplemental jurisdiction over state claims where Clewis has failed to present any viable federal claims over which the Court could have original jurisdiction. *See* 28 U.S.C. §1367(c)(3).

### 2.    Destruction of property authorized by prison policy AD-03.72.

Clewis brings claims against Warden Hirsch, Warden Mayfield, Officer Hightower, Officer Fisher, Quada, Major Jenkins, Warden Selman, Captain Vaughn, and Barrow for the destruction of his property (legal papers) pursuant to AD-03.72 on or around April 5, 2013. Clewis alleges that defendants implemented a policy—AD-03.72—that was unconstitutionally vague and deprived him of due process.

AD-03.72 governs "Offender Personal Property and Confiscation and Disposal of Contraband."[84]  Under this policy, unauthorized items, including excessive amounts of property or items which fall within the definition of contraband, are subject to confiscation and may be seized by staff. *See* AD-03.72 VI (A) ("An offender's personal property may be confiscated at any time, from any location, for the reasons indicated in this section, as well as other appropriately documented circumstances as necessary to ensure safety and security.").[85]  To the extent that Clewis's property was confiscated and disposed of pursuant to prison policy AD-03.72, it was not a random, unauthorized act by a state employee and the *Parratt/Hudson* doctrine does not apply.  *See Allen v. Thomas*, 388 F.3d 147, 149 (5th Cir. 2004).

In order for defendants to be liable under section 1983 in their individual capacities, Clewis must show each defendant's involvement in a violation of a federal constitutional or statutory right and that the right was "clearly established" at the time of the harm.  *Ashcroft*, 131 S. Ct. at 2080.  Defendants, even supervisory defendants, could be liable if they implement a policy "so deficient that the policy 'itself is a repudiation of constitutional rights' and is 'the moving force of the constitutional violation.'"  *Thompkins v. Belt*, 828 F.2d 298, 304 (5th Cir.

---

[84] *See* Administrative Directive ("AD") 03.72 (Docket Entry No. 40-1, Exh. A), at 2 of 26.

[85] Docket Entry No. 40-1, Exh. A, at 18 of 26.

1987).

Clewis alleges that the prison officials were implementing prison policy AD-03.72 when they disposed of his property.  In order for Clewis to overcome defendants' qualified immunity with respect to following AD-03.72, he must show that the unconstitutionality of the policy is "clearly established" or that defendants' actions in following the policy were objectively unreasonable and resulted in a violation of clearly established federal constitutional or statutory rights.  *See Dilmore v. Stubbs*, 636 F.2d 966, 969 (5th Cir. 1981).

To the extent that Texas prisoners have a right to possess personal belongings, the deprivation of property implicates the Constitution only if such deprivation is accomplished without due process.  *Parratt,* 451 U.S. at 537.  When deprivation of property is occasioned by an official policy, an inmate must be afforded some combination of notice prior to the deprivation and an opportunity to be heard.  *Zinermon v. Burch,* 494 U.S. 113, 126 (1990). Clewis alleges that he was not afforded due process before his property was destroyed and that AD-03.72 is unconstitutionally vague.[86]  As shown below, neither contention has merit.

### a.    Due Process

Due process requires notice and an opportunity to be heard "at a meaningful time and in a meaningful manner."  *Mathews v. Eldridge*, 424 U.S. 319, 333 (1976) (citations omitted).  In the prison context, "[b]ecause legalistic wrangling over the meaning of prison rules may visibly undermine the [prison] administration's position of total authority, federal courts have deferred to the interpretation of those rules by prison authorities 'unless fair notice was clearly lacking.'" *Adams v. Gunnell,* 729 F.3d 362, 369 (5th Cir.1984) (internal citations and quotations omitted).

The record indicates that Clewis had notice of the confiscation and disposal procedures

---

[86] Complaint at 4(o) ¶ 33.

and sought the return of his property through the grievance process.[87]   Uncontroverted summary judgment evidence indicates that Clewis's property was confiscated on October 18, 2012 because he had excessive amounts of property that did not fit in the container that was issued to him.[88]   This excess property was subject to confiscation according to AD-03.72VI(D)(4).[89]   He was advised that he could dispose of the property by mailing the items to an approved person on his visitor list or by giving the items to an approved visitor at the time of a visit.[90]   On November 28, 2012, Clewis was informed that his items were confiscated according to AD-03.72 and that it was his *"responsibility to reconcile with the property officer to make appropriate disposition of the confiscated property."*[91]   He did not send his items home or reconcile with the property officer to make appropriate disposition of his property.

The record evidence further indicates that Clewis was notified on January 31, 2013 that his excess property could not be stored and that he chose which items to keep and which items were subject to disposal.[92]  Clewis alleges that he offered, on April 3 or 4, 2013, to go to the commissary to get postage to send the items home, but there is no evidence to raise a fact issue that he ever provided the postage or made satisfactory arrangements within 60 days of the January 31, 2013 grievance response.   He had previously been warned by Officer Hightower that she could only retain property in the property room for 60 days regarding Clewis's damaged typewriter, and the excess property disposed of here had been in the property room almost six

---

[87] *Id.* at 4(m) ¶29, 4(n) ¶31, 4(o) ¶ 32.

[88] Complaint at 4(k) ¶ 26; Docket Entry No. 35-1, Exh. B to Defendants' Motion at 51.

[89] Docket Entry No. 40-1, Exh. A, at 21 of 26.

[90] *Id.* at 4(o) ¶ 31.

[91] *Id.* at 4(l) ¶ 26; *accord* Docket Entry No. 35-1, Exh. B at 48 (emphasis added).

[92] Complaint at 4(m) ¶ 29.

months before it was disposed of pursuant to policy.[93]

In sum, Clewis had ample notice and an opportunity to be heard about the confiscation and disposition of his excess property and did not act to send his items home in a timely manner according to prison policy. Clewis does not meet his burden to show that defendants acted unreasonably or deprived him of due process when they disposed of his property pursuant to AD-03.72. Accordingly, defendants are entitled to summary judgment on Clewis's due process claims regarding the destruction of his property in accordance with AD-03.72.

### b.      Vagueness

Likewise, there is no merit to Clewis's claim that AD-03.72 is unconstitutionally vague and no indication that it was clearly established that AD-03.72 was constitutionally infirm in any way. "Vagueness doctrine is an outgrowth not of the First Amendment, but of the Due Process Clause." *Munn v. City of Ocean Springs*, 763 F.3d 437, 439 (5th Cir. 2014) (citing *United States v. Williams*, 553 U.S. 285, 304 (2008)). To comport with due process, a law must provide "sufficient guidance such that a man of ordinary intelligence would understand what conduct is being prohibited." *Id*.

AD-03.72 expressly prohibits inmates from keeping excessive amounts of property and provides that an offender has seven days to eliminate excesses or the excess property will be disposed of in accordance with section VII(B). *See* AD-03.72 VI(D)(1-4).[94] Section VII(B) of the policy sets forth the following provisions related to offender options for the excess property of inmates that has been confiscated: (1) mail it to someone on offender's visitor list at offender's expense, but postage must be received by the TDCJ within 60 days; (2) transfer it to

---

[93] *Id*. at 4(c) ¶ 10 ; 4(o) ¶ 32.

[94] Docket Entry No. 40-1, Exh. A, at 21 of 26.

someone on prisoner's visitor list within 60 days; (3) mail it to prisoner's attorney at prisoner's expense; or (4) request that the TDCJ dispose of the items.  *See* AD-03.72 VII(B)(1-4).[95]

As shown above, officials at the Wynne Unit gave Clewis fair notice that it was his responsibility to make proper arrangements for his property.  A person of ordinary intelligence would understand that the failure to send excess property home in a timely fashion would result in the disposal of that property by the prison.  *Munn*, 763 F.3d at 439.  Clewis does not meet his burden to show that it is clearly established that AD-03.72 is unconstitutionally vague such that it was unreasonable for defendants to implement it as to him.  *See Dilmore*, 636 F.2d at 969.  Defendants are entitled to summary judgment on Clewis's claims regarding the disposition of his property.

### 3.    Access to Courts Claims

Clewis alleges that the destruction of his legal papers, the limitations on his attendance at the law library for being late, and the absence of certain resources at the law library interfered with his constitutional right of access to courts.  None of these state a viable claim for relief.

Prisoners have a constitutionally protected right of access to the courts. *See Lewis v. Casey,* 518 U.S. 343, 350 (1996) (citing *Bounds v. Smith,* 430 U.S. 817 (1977)). That right of access to the courts is generally afforded by the First, Fifth, and Fourteenth Amendments, the Due Process Clause, and the Equal Protection Clause.  *See Christopher v. Harbury,* 536 U.S. 403, 415 & n.12 (2002) (collecting cases that demonstrate the "unsettled . . . basis of the constitutional right of access to courts").

Even so, a prisoner's right of access to courts is not unlimited.  *See Jones v. Greninger,* 188 F.3d 322, 325 (5th Cir. 1999) (citing *Johnson v. Rodriguez,* 110 F.3d 299, 310 (5th Cir.),

---

[95] *Id.* at 24 of 26.

*cert. denied,* 522 U.S. 995 (1997)). The right encompasses only a reasonably adequate opportunity for inmates to file nonfrivolous legal claims challenging their convictions or conditions of confinement. *See Jones,* 188 F.3d at 325 (citing *Lewis,* 518 U.S. at 351). In that regard, inmates are "not guarantee[d] the wherewithal to transform themselves into litigating engines capable of filing everything from shareholder derivative actions to slip-and-fall claims." *Lewis,* 518 U.S. at 355. Instead, they are merely guaranteed "the conferral of a capability—the capability of bringing contemplated challenges to sentences or conditions of confinement before the courts." *Id.* Thus, the right of access to courts is "ancillary to the underlying claim, without which a plaintiff cannot have suffered injury by being shut out of court." *Harbury,* 536 U.S. at 415.

Clewis alleges that the destruction of legal property interfered with his access to courts regarding his lawsuit contesting the administration of his father's estate. *See In re Estate of Redell Clewis Sr.*, Cause No. 307,615-401 (Harris County Texas Probate Court No. 3); Complaint at 4(e) ¶ 13 (identifying the legal materials allegedly destroyed as "the case(s) concerning my father's estate"). [96]  He also mentions that he had a ticket from the City of Houston regarding some property that he owns.[97]  Neither of these matters relates to his underlying conviction or to prison conditions of his present confinement. *See Jones,* 188 F.3d at 325 (citing *Lewis,* 518 U.S. at 351).  Accordingly, Clewis's access to courts claims regarding the alleged destruction of legal property fail as a matter of law and will be dismissed.

Likewise, inadequate access to a law library or the lack of a specific legal resource does

---

[96] *See also* Docket Entry No. 1-5, Exh. 3 at 2; Docket Entry No. 1-6, Exh. 1 at 5; Docket Entry Nos. 1-7, 1-8.

[97] Complaint at 4(p) ¶ 35.  Clewis does not allege that the ticket from the City was confiscated or that it had any relation to a court challenge to his conviction or conditions of his confinement.

not in itself establish a denial of access to courts. The right of access to courts requires prison administrators to make law library facilities available to inmates or to otherwise provide alternative means to achieve access to courts. *See Bounds,* 430 U.S. at 830. There is, however, no "abstract, freestanding right to a law library or legal assistance," and an inmate cannot demonstrate the requisite actual injury for an access-to-courts claim "simply by establishing that his prison's law library or legal assistance program is subpar in some theoretical sense." *Lewis,* 518 U.S. at 351.

Here, Clewis complains that Officer Goodrum denied him access to the law library for being late and yelled at him for staying in the library extra time, and that the law library does not have some of the books he would like.[98]  Clewis does not deny that he was late on more than one occasion but instead states that the guards did not call his block on time to get to the library.[99] He also does not allege that he has no access to the law library, but instead states on his grievance that he is allowed to stay an extra hour every day at the law library.[100]  Clewis does not allege facts showing that, by restricting his access on a couple of occasions or by not having some of the resources he would like, he was denied access to courts such that it adversely affected his ability to proceed with a pending case regarding the conditions of his incarceration or his underlying conviction.  Accordingly, Clewis's access to courts claims fail as a matter of law.

### 4.    Due Process–Disciplinary Convictions

Although not entirely clear from his pleadings, Clewis appears to assert that he was

---

[98] Docket Entry No. 1-17 at 2-3, 8. Docket Entry No. 1-1 at 4(t), 4(u) [Pages 6-7 of 15].

[99] Docket Entry No. 1-17 at 2-3, 8.

[100] *Id*. at 8.

deprived of substantive and procedural due process in conjunction with three disciplinary convictions: Disciplinary Case No. 20120217073, arising from the April 5, 2012 shakedown; Disciplinary Case No. 21030110920, arising from the December 19, 2012 defacing of state legal property; and Disciplinary Case No. 21030112498, arising from Clewis's eating candy in the law library on or around December 20, 2012.   He seeks an expungement of his disciplinary convictions from his record.

Prisoners charged with rule infractions are entitled to certain due process rights under the Fourteenth Amendment when disciplinary action may result in a sanction that impinges upon a liberty interest.   *Hudson v. Johnson,* 242 F.3d 534, 535-36 (5th Cir. 2001) (citing *Wolff v. McDonnell*, 418 U.S. 539, 557 (1974)).   In Texas, however, only sanctions that result in the loss of good time credits for inmates who are eligible for release on mandatory supervision or that otherwise directly and adversely affect release on mandatory supervision will impose upon a liberty interest.   *Malchi v. Thaler,* 211 F.3d 953, 957-58 (5th Cir. 2000); *Madison v. Parker,* 104 F.3d 765, 768 (5th Cir. 1997); *Orellana v. Kyle,* 65 F.3d 29, 31-33 (5th Cir. 1995).

Clewis seeks expungement of his disciplinary convictions but does not allege, or present any evidence to show, that he is eligible for release on mandatory supervision.   Eligibility for release to mandatory supervision is governed by the law in effect at the time the offense was committed.   *Ex parte Lindsey*, 235 S.W.3d 233, 234 (Tex. Crim. App. 2007).   Prior to 1987, only those inmates under a sentence of death were excluded from eligibility for mandatory supervision.   *See* Tex. Code Crim. Proc. art. 42.18, § 8(c) (1981) (providing that an inmate not under a sentence of death "shall be released to mandatory supervision" when the "calendar time he has served plus any accrued good conduct time equal the maximum term to which he was sentenced").   Effective September 1, 1987, the Texas legislature amended the mandatory

supervision release statute, formerly codified at Code of Criminal Procedure Article 42.18, Section 8(c), to make certain inmates with serious convictions ineligible for release. *See* Act of May 23, 1987, 70th Leg., R.S., ch. 1101, § 7, 1987 Tex. Gen. Laws 3754. Pursuant to this 1987 amendment, inmates convicted of sexual assault and aggravated sexual assault are among those ineligible for release on mandatory supervision. *See Ex parte Ervin*, 187 S.W.3d 386, 388 (Tex. Crim. App. 2005).

A review of public court records, of which the Court takes judicial notice, shows that Clewis was sentenced to twenty-five years of incarceration on June 13, 1994 for aggravated sexual assault of a child on June 18, 1988.[101] Under the statute in effect on the date of his offense, offenders convicted of aggravated sexual assault are not eligible for mandatory release.[102] Clewis, convicted of aggravated sexual assault of a child, is not eligible for mandatory supervised release under the law in effect at the time of his offense. Therefore, Clewis's disciplinary convictions do not impugn a protected liberty interest and his claims regarding the disciplinary convictions do not implicate due process concerns.[103]

### 5.     Due Process–Storage Space

To the extent that Clewis asserts a procedural due process claim concerning the denial of an extra storage unit pursuant to TDCJ regulations, "[t]he requirements of procedural due process apply only to the deprivation of interests encompassed by the Fourteenth Amendment's

---

[101]     *See* TDCJ Offender Information Website, *available at* http://offender.tdcj.state.tx.us/OffenderSearch/offenderDetail.action?sid=02759103, last visited on January 5, 2016.

[102] *See* TEX. CODE OF CRIM. P. Art. 42.18 (effective Sept. 1, 1987).

[103] Alternatively, it does not appear that Clewis lost good-time credit as the result of the challenged disciplinary convictions or that any of the punishment imposed affected a liberty interest. In any case, Clewis does not present evidence to raise a fact issue that he was denied notice and an opportunity to be heard in a meaningful time and meaningful manner with respect to any of his disciplinary convictions, and therefore his due process claims fail for this additional reason.

protection of liberty and property." *Bd. of Regents v. Roth*, 408 U.S. 564, 569 (1972).  The Fifth Circuit has found that TDCJ's facially neutral prison storage space directives do not violate the Due Process Clause. *Guajardo v. Crain,* 275 F. App'x. 290, 291 (5th Cir. 2008); *Duplantis v. Carmona*, 85 F. App'x. 397, 398 (5th Cir. 2004).

Similarly, Clewis does not raise a fact issue on his substantive due process claim. To state a substantive due process claim, Clewis must allege a deprivation of a constitutionally protected right. *Mikeska v. City of Galveston,* 451 F.3d 376, 379, (5th Cir. 2006). He must then state facts showing that defendants' actions were not "rationally related to a legitimate government interest." *Id.*

First, Clewis does not assert the deprivation of a constitutional right.  As examined above, his access to courts claims fail as a matter of law, and he was afforded procedural due process before the officials disposed on his property and denied him an extra storage box. Further, he does not show that defendants' actions in following prison policy, or the policy itself, are not rationally related to some legitimate governmental interest.  *See, e.g., Sullivan v. Ford*, 609 F.2d 197 (5th Cir. 1980) ("A state has a compelling interest in maintaining security and order in its prisons and, to the extent that it furthers this interest in reasonable and nonarbitrary ways, property claims by inmates must give way.").  Accordingly, Clewis does not produce evidence to raise a fact issue that any of the defendants violated his substantive due process rights.

### 6.    Eighth Amendment

Clewis generally alleges that Captain Baggett, Captain Demyers, Sergeant Merchant, Lieutenant Burleyson, and Lieutenant Rigsby violated his Eighth Amendment rights.   To establish an Eighth Amendment violation of conditions of confinement, an inmate must first

show that the deprivation alleged was sufficiently serious, *i.e.,* an official's act or omission resulted in the denial of "the minimal civilized measure of life's necessities." *Farmer v. Brennan*, 511 U.S. 825, 834 (1994) (citations omitted). Second, the inmate must show that the offending prison official possessed a sufficiently culpable state of mind, *i.e.,* the undue hardship endured by the prisoner was a result of the prison official's deliberate indifference. *Id.* (citing *Wilson v. Seiter,* 501 U.S. 294, 297, 303-04 (1991)).

This test, as applied here, compels the conclusion that none of the named defendants violated Clewis's Eighth Amendment rights. The Fifth Circuit has stressed that to "violate the Cruel and Unusual Punishments Clause, a prison official must have a 'sufficiently culpable state of mind . . . that state of mind is one of 'deliberate indifference' to inmate health or safety.'" *Williams v. Hampton*, 797 F.3d 276, 280 (5th Cir. 2015) (*en banc*) (holding that the prison guard's actions or omissions did not, as a matter of law, rise to the level of deliberate indifference) (citations omitted). Deliberate indifference is an "'extremely high standard to meet'" because it "requires a showing that the prison official 'knows of and disregards' the substantial risk of serious harm facing the inmate." *Morgan v. Hubert*, 459 F. App'x 321, 326 (5th Cir. 2012) (quoting *Farmer*, 511 U.S. at 837).

Against Captain Baggett and Captain Demyers, both disciplinary hearing officers, Clewis alleges that they violated his Eighth Amendment rights but does not articulate any facts to show how any of the Captains' actions constituted a denial of the minimal civilized measure of life's necessities or amounted to deliberate indifference of a substantial risk of serious harm to Clewis. *See Farmer*, 511 U.S. at 834. Clewis fails to state a claim against Captain Baggett and Captain Demyers for cruel and unusual punishment.

Against Sergeant Merchant, Lieutenant Burleyson, and Lieutenant Rigsby, Clewis

generally complains that they made him comply with the shakedown procedures or required him to carry his property back to his cell.  There is no allegation that any of the defendants ever used force against Clewis, but construing his pleadings liberally, Clewis appears to allege that requiring him to comply with prison procedures caused him pain which, in turn, violated the prohibition on cruel and unusual punishment.  Clewis also alleges that Lieutenant Burleyson and/or Lieutenant Rigsby taunted him while he dragged his property to the shakedown area.[104]

Clewis admits in his pleadings that defendants allowed Clewis to take as many trips as he needed and to break down his property into smaller amounts that complied with his 25 pound weight restriction.[105]  There is no indication or allegation that the guards did not comply with any medical directives or that they disregarded any special instructions from the medical staff.  In fact, Clewis himself recounts that Sergeant Merchant specifically asked him if he had a pass for a cart, and he told her he did not.[106]  Clewis does not plead facts to indicate that any of the guards were deliberately indifferent to a serious risk of harm to Clewis; rather, his pleadings indicate that the guards accommodated his medical restrictions.

Construed liberally, the Complaint alleges, at most, that the guards were unkind or impatient with Clewis and/or mocked him as he had to carry his excess property to and from his cell.  Regarding Eighth Amendment claims, "[i]t is clear that verbal abuse by a prison guard does not give rise to a cause of action under section 1983." *Siglar v. Hightower*, 112 F.3d 191, 193 (5th Cir. 1997) (citing *Bender v. Brumley*, 1 F.3d 271, 274 n. 4 (5th Cir.1993)).  Because Clewis does not otherwise allege any facts that rise to level of an Eighth Amendment violation against

---

[104] Complaint at 4(f) ¶ 18.

[105] *Id*. at 4(g) ¶ 18, 4(k) ¶ 26.

[106] *Id*. at 4(h) ¶ 21.

any defendant, his Eighth Amendment claims will be dismissed as legally frivolous under 28 U.S.C. § 1915A(b)(1).

### 7.    Retaliation

Clewis also generally alleges that Sergeant Merchant retaliated against him for filing grievances against her for making him carry his property to his cell, and that Officer Goodrum retaliated against him because Clewis complained that Officer Goodrum allegedly did not allow Clewis to use the law library when Clewis was late.

Although it is well established that a prison official may not retaliate against an inmate for complaining through proper channels about a prison official's misconduct, *Bibbs v. Early*, 541 F.3d 267, 270 (5th Cir. 2008), a prisoner's personal belief that retaliation must have been the reason for the adverse action is insufficient to state a valid claim under 42 U.S.C. § 1983. *See Jones,* 188 F.3d at 325. "To prevail on a claim of retaliation, a prisoner must establish (1) a specific constitutional right, (2) the defendant's intent to retaliate against the prisoner for his or her exercise of that right, (3) a retaliatory adverse act, and (4) causation." *McDonald v. Steward,* 132 F.3d 225, 231 (5th Cir.1998). "Causation requires a showing that but for the retaliatory motive the complained of incident . . . would not have occurred." *Id.* (internal quotation marks and citations omitted).

The need for close scrutiny of individual retaliation claims is especially keen in the prison context. The Fifth Circuit has admonished district courts: "To assure that prisoners do not inappropriately insulate themselves from disciplinary actions by drawing the shield of retaliation around them, trial courts must carefully scrutinize these claims." *Woods v. Smith,* 60 F.3d 1161, 1166 (5th Cir. 1995). Accordingly, the Court has carefully scrutinized the claims against Sergeant Merchant and Officer Goodrum below and finds that Clewis cannot raise a fact issue on

essential elements of retaliation in each case.

### a.  Sergeant Merchant

Clewis alleges that Sergeant Merchant retaliated against him on April 26, 2012 by requiring him to take his property back to his cell and telling him that she would write him up until he got into compliance with prison rules.  Clewis does not produce evidence to raise a fact issue that Sergeant Merchant caused him to suffer a retaliatory adverse action or that she possessed retaliatory intent when she required him to comply with prison rules and procedures to take his property to his cell.  Clewis admits that Sergeant Merchant allowed him to break down his property to manageable parcels and to take as many trips as needed.[108]  Clewis also admits that he did not have a medical pass for a cart.  There is no evidence that Sergeant Merchant required Clewis to do something she knew he was medically unable to do or that she did not allow him to act within his medical limitations to comply with her orders.  Clewis does not present evidence to indicate that Sergeant Merchant's requiring him to be in compliance with prison rules would "deter the ordinary person from further exercise of his rights."  *Morris v. Powell*, 449 F.3d 682, 684-86 (5th Cir. 2006) (a prisoner "must allege more than *de minimus* retaliation to proceed with such a claim").

Further, there is no evidence that Sergeant Merchant had the intent to retaliate against Clewis.  By Clewis's own account, Sergeant Merchant was "angry, I believe, because I filed a grievance **or** because I'm getting all my property back."[109]  Clewis surmises that Sergeant Merchant was angry that he was getting his property back after it was confiscated and alleges that Sergeant Merchant yelled at him that she was going to write him up until he got into

---

[108] Complaint at 4(g) ¶ 18, 4(k) ¶ 26.

[109] Complaint at 4(i) ¶ 22 (emphasis added).

compliance with the rules.[110]   Clewis does not produce evidence to raise a fact issue that Sergeant Merchant, by telling him she was going to make him comply with prison rules, had the intent to retaliate against him for filing grievances against her, and Clewis's subjective belief and conjecture (naming a couple of possible motives in the disjunctive) are insufficient to survive summary judgment.  *Moody v. Baker,* 857 F.2d 256, 258 (5th Cir.1988).

Moreover, there is no evidence that retaliation was the "but for" cause of Clewis's having to move his property from the property room to his cell.  *See Garner v. Moore*, 536 F. App'x 446, 450-51 (5th Cir. 2013) (citations omitted).  According to Clewis's own pleadings, Clewis himself went to retrieve his property and twice refused to sign for it.  After Officer Hightower released the property to Clewis, Sergeant Merchant showed up and informed Clewis that she expected him to be in compliance with the rules and that she would write him up every day for non-compliance.  The prison rules prohibit excess amounts of property.  *See* AD-03.72 VI(D)(1-4).[111]   Clewis alleges that he had 10 bags of property at the property room, which he acknowledges Sergeant Merchant allowed him to break into smaller amounts in order for him to transport it all to his cell.[112]   There is no evidence that the "but for" cause of Clewis having to transport all of his property to his cell—even if such could be considered a "retaliatory adverse act"—was anything other than Clewis's own desire to retrieve his property from the property room.  Clewis' retaliation claim against Sergeant Merchant is subject to dismissal.

---

[110] *Id.*

[111] To the extent that Clewis argues that he does not have to be in compliance with prison rules regarding his property, the AD-03.72 policy statement expressly provides: "An offender who chooses to possess property while in the TDCJ thereby consents to TDCJ's rules and regulations regarding the acquisition, possession, storage, and disposition of said property."  AD-03.72 at 1, Docket Entry No. 40-1 at Page 2 of 26.

[112] Complaint at 4(i) ¶ 22.

### b.    Officer Goodrum

Clewis alleges that Officer Goodrum "retaliated and harassed plaintiff for his good faith use of TDCJ's grievance procedure to complain about said retaliation and harassment for invoking his access to courts rights through the use of the unit law library by writing plaintiff I-210 reports."[113]   The summary judgment evidence shows that on November 13, 2012, Clewis filed a grievance against Officer Goodrum for allegedly denying Clewis access to the library on that date because Clewis showed up late.[114]   On December 19, 2012, Quada, the Unit Access to Courts Supervisor, confronted Clewis about writing in pen on a legal case, and Officer Goodrum was the charging officer on the disciplinary case concerning that conduct.   On December 20, 2012, Clewis came to the library with a candy in his mouth after Officer Goodrum had previously told him not to come to eat candy in the law library, which resulted in another disciplinary case.[115] As discussed above, Clewis was found guilty of each of these offenses.[116]

In order to prevail on his retaliation claim against Officer Goodrum, Clewis must first establish that there was an infringement of a specific constitutional right.   Clewis alleges that Officer Goodrum interfered with his right to access to the courts because Officer Goodrum denied him access to the law library for being late on November 13, 2012.   As discussed above, prisoners are not entitled to "unlimited access to prison law libraries."   *Jones*, 188 F.3d at 325 (holding that limiting a prisoner to five hours a week in the law library did not infringe his

---

[113] Complaint at 3(b).   An I-210 report is a disciplinary report filed against an inmate when the inmate breaks prison rules.  *See* "Disciplinary Rules and Procedures for Offenders" at Attachment D, February 2015, *available at* tdcj.state.tx.us.

[114] Docket Entry No. 1-17 at 2-3.

[115] *Id*. at 20.

[116] *Id*. at 16, 20.

constitutional right to access the courts).  Clewis admits that he usually receives ten hours of law library time and that he has been approved for an hour more per day than most prisoners receive.[117]  Clewis fails to raise a fact issue that Officer Goodrum infringed on his constitutional rights.

Although the Fifth Circuit has "declined to hold as a matter of law that a legitimate prison disciplinary report is an absolute bar to a retaliation claim, the existence of same, properly viewed, is probative and potent summary judgment evidence."  *Woods*, 60 F.3d at 1166.  The evidence in the record shows that there was a legitimate reason for each disciplinary action and that Clewis was found guilty of both offenses.  Clewis does not raise a fact issue that a retaliatory motive was the but-for cause of receiving discipline when he acknowledges that he had come to the library with candy after being told no to do so and does not deny that he wrote on a case in the case book.[118]  *See Garner*, 536 F. App'x at 450-51 (finding no but-for causation where plaintiff was denied access to law library because he failed to fill out forms correctly even though plaintiff arguably showed a chronology from which causation could be inferred).  Accordingly, Officer Goodrum is entitled to summary judgment on Clewis' retaliation claim.

**D.    ADA**

Title II of the ADA provides that "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity or be subjected to discrimination by any such entity."  42 U.S.C. § 12132. To establish a claim under the ADA, the plaintiff must show: (1) that he is a qualified individual under the Act; (2) that he is being excluded from participation in

---

[117] Docket Entry No. 1-17 at 3, 8.

[118] *Id*. at 18-19, 21-22.

or being denied benefits of services, programs, or activities for which the defendants are responsible, or that he is otherwise being discriminated against by the defendants; and (3) that this exclusion, denial of benefits, or discrimination is by reason of the disability. *Lightbourn v. County of El Paso, Texas,* 118 F.3d 421, 428 (5th Cir.1997). Title II of the ADA applies to state prison facilities and state prison services. *See Pennsylvania Dep't of Corrections v. Yeskey,* 524 U.S. 206, 210 (1998).

The Fifth Circuit accords prison officials deference in their determinations of appropriate accommodations when it considers ADA claims in the prison context. *See Wells v. Thaler*, 460 F. App'x 303, 313 (5th Cir. 2012) (citing *Oliver v. Scott*, 276 F.3d 736, 745 (5th Cir. 2002); *Elliott v. Lynn*, 38 F.3d 188, 190–91 (5th Cir.1994)). "Because title II evaluates a public entity's programs, services, and activities in their entirety, public entities have flexibility in addressing accessibility issues." 28 C.F.R. § Pt. 35, App. A, Subpt. D § 35.150(b)(2) (citing 28 C.F.R. 35.150(a)).

As a preliminary matter, Clewis cannot recover from any of the defendants in their individual capacities under the ADA. *See Gonzales v. City of Corpus Christi,* No. 05–280, 2005 WL 3058168 at *7 (5th Cir. Nov. 9, 2005) (holding that Title II of the ADA does not contemplate holding officers liable in their individual capacities). Accordingly, Clewis's ADA claims against all defendants in their individual capacities are subject to dismissal.[119]

---

[119] **Error! Main Document Only.**It is not clear from their motion whether Defendants raise Eleventh Amendment immunity with respect to Clewis's ADA claims. In *United States v. Georgia,* the Supreme Court established a three-part test for determining whether immunity is validly abrogated in a given case. 546 U.S. 151, 159 (2006). The court first determines "which aspects of the State's alleged conduct violated Title II," and then determines "to what extent such misconduct also violated the Fourteenth Amendment." *Id.* Where the State's conduct violates both Title II and the Fourteenth Amendment, Title II abrogates sovereign immunity. *Id.* Where the conduct violates Title II, but not the Fourteenth Amendment, a court must then determine "whether Congress's purported abrogation of sovereign immunity as to that class of conduct is nevertheless valid." *Id.* at 159. As set forth above, Defendants' conduct did not violate Title II. Therefore, the Court need not reach the other prongs of the Eleventh

Next, to the extent that Clewis has asserted a claim against unspecified defendants in their official capacities for violating the ADA, such claim is also subject to dismissal. Clewis states no facts to show that any defendant's denial of a cart during the shakedowns, for example, was by reason of Clewis's disability. In fact, Clewis admits that he did not have a medical pass for a cart.[120] Even assuming Clewis's 25-pound lifting restriction is considered a "qualifying disability" under the ADA, Clewis admits, and the record reflects, that defendants allowed him to break up his property into smaller bags and take multiple trips to comply with his restriction. Clewis does not raise a fact issue that he was denied access or that prison guards failed to make reasonable accommodations for his medical condition.

Notably, Clewis's ADA issues appear to center on his frustration with the medical staff's refusal to grant him certain medical restrictions (*e.g.*, denying him a first floor housing restriction or a cart), but the shortcomings of the expert assessments of medical staff or the quality of medical treatment received are not cognizable under the ADA.[121] *See Nottingham v. Richardson*, 499 F. App'x 368, 377 (5th Cir. 2012) ("The ADA is not violated by 'a prison's simply failing to attend to the medical needs of its disabled prisoners.'" (quoting *Bryant v. Madigan*, 84 F.3d 246, 249 (7th Cir.1996)); *Doe v. Pfrommer*, 148 F.3d 73, 84 (2d Cir. 1998) (holding that plaintiff's challenge to the "substance of the services provided to him through [the Vocational Educational Services for Individuals with Disabilities]" did not state a claim under the ADA); *see also Burger v. Bloomberg*, 418 F.3d 882, 882 (8th Cir. 2005) (medical treatment decisions are not a

---

Amendment analysis under *Georgia*.

[120] Complaint at 4(h) ¶ 21.

[121] Clewis recounts several medical grievances in his pleadings which have not been outlined above because he does not tie them to any ADA or Eighth Amendment claims and no medical providers were named as defendants. *See generally* Complaint at 4(c), 4(d), 4(e), 4(j), 4(k).

basis for ADA claims); *Fitzgerald v. Corr. Corp. of Am.*, 403 F.3d 1134, 1144 (10th Cir. 2005) (medical decisions and medical negligence not ordinarily within scope of ADA).

In sum, Clewis presents no evidence to raise a fact issue that any named defendant discriminated against him or denied him access to a program, service, or activity because of a disability. Clewis does not allege, much less show, how he was discriminated against or how he was denied access to a program, service, or activity of the prison because of his disability. Because Clewis fails to produce evidence to establish that he was excluded from prison activities, programs, or services or otherwise discriminated because of his disability, or that prison officials did not provide him with reasonable accommodations for his limitations, defendants are entitled to summary judgment regarding Clewis's ADA claims.

## IV.    Conclusion and Order

Based on the foregoing, the Court **ORDERS** the following:

1.    Defendants' Motion for Summary Judgment is in all things **GRANTED**.

2.    Clewis's Eighth Amendment claims are **DISMISSED WITH PREJUDICE** as frivolous under 28 U.S.C. § 1915A.

3.    All claims against all defendants are **DISMISSED WITH PREJUDICE**.

4.    Clewis shall **TAKE NOTHING** on his claims.

5.    Clewis's motions for discovery, for appointment of counsel, and all other pending motions, if any, are **DENIED**.

The Clerk will send a copy of this Order to all of the parties.

SIGNED at Houston, Texas, this 30th day of March, 2016.

_____
MELINDA HARMON

UNITED STATES DISTRICT JUDGE